*Muir & Hayman, for appellees.*

---

D. LINGENFELTER, ET AL *v.* R. M. CARLISLE'S ADMR., ET AL.

E. J. GREEN, ET AL. *v.* JOHN ELLIS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—896.]

**Judgment Taken on Constructive Notice.**

A judgment taken against a nonresident defendant on constructive notice may be set aside within five years, and such a defendant may move to have the action retried as if there had been no judgment; and where he dies during such period his heirs may file such a motion.

**Result of a Disclaimer or Failure to Assert a Right.**

Where one is in possession of land under a deed from an officer of the state who had sold it, and is asserting a claim in his own right and has had such possession almost long enough to bar its recovery from him, and some of those interested in the land disclaim this interest, or fail or decline to assert their claim as against his, such person, if living, or his heirs where he is dead, is entitled to such disclaimed or unasserted interests.

APPEALS FROM KENTON CIRCUIT COURT.

April 26, 1883.

OPINION BY JUDGE PRYOR:

Many years since W. T. Carlisle instituted an action in equity in the Kenton Circuit Court against R. M. Carlisle for a partition of a tract of two hundred fifty-six acres of land between the heirs of his father, John Carlisle, or rather asked that his interest be allotted to him.

The defendant, R. M. Carlisle, was also an heir of John Carlisle but claimed to have acquired the absolute title to the land by reason of a conveyance from the sergeant of the general court made to him in a proceeding by the commonwealth against his father for a debt due the state, in which proceeding a sale was made of the land and he (R. M. Carlisle) became the purchaser. The other heirs, all but two or three of them, filed answers and cross-petitions, all of them having been made defendants, seeking to have their interests in the land allotted, and an issue raised by proper pleadings denying the right of R. M. Carlisle under the deed from the general court, insisting that he held in common with the other children and had no greater interest. R. M. Carlisle had been in possession of the land for many years claiming under the deed, and made valuable and lasting improvements, and otherwise controlled it as if he were the real owner. The court below on the hearing of that case decided adversely to the children, and all but two of them appealed, and this court reversed the judgment of the lower court, and directed or adjudged that a partition should be made. On the return of the cause a reference was made to the master directing him to take an account of the advancements made by John Carlisle to each one of his children, there being nine in number, and also to ascertain the rental value of the land while R. M. Carlisle had the possession and the lasting improvements made by him on the premises.

Before proceeding to dispose of the various questions raised on the proceedings had after the return of the cause we will dispose of the appeal of *A. Lingenfelter's Heirs v. R. M. Carlisle's Admr. and Heirs* taken on the same record and directly connected with the questions raised on the appeal in the original case. One of the children of John Carlisle (the common ancestor), Sallie, married A. Lingenfelter and died before her father, but leaving surviving her one child, John F. Lingenfelter. This child, John, died of full age and unmarried, leaving his father surviving him; and this being the case his father took from him that portion of the realty inherited by

John from his grandfather. These facts R. M. Carlisle alleges in his answer to the original and cross-actions of his brothers and sisters in which they seek partition. The plaintiffs in the original action made John's father, A. Lingenfelter, a defendant, and being a nonresident he was proceeded against by a constructive summons and brought before the court in no other way than by a constructive service. After this was done the judgment was rendered, as before stated, in the original action adverse to the children and reversed by this court. A. Lingenfelter, being a nonresident and constructively summoned, did not prosecute an appeal from that judgment, but died shortly before or after the judgment was reversed by this court. After his death his children came into court by their petition, alleging all the facts, that their ancestor was before the court by constructive service and they had the right to have the judgment of September 8, 1874, vacated and their defense heard. This petition was filed in September, 1877, a little over three years from the judgment. The facts are all conceded and their petition made, and their answer and cross-petition permitted to be filed over the objections made by the heirs of R. M. Carlisle, he having in the meantime died.

The chancellor below refused to give them any part of the land and decided they were not entitled. The reason doubtless influencing the chancellor was, that the remedy was by an appeal and not by petition to show cause against the judgment. They, as the next of kin of A. Lingenfelter, had the same right that he had to be heard in the premises, and we are satisfied that he could have appeared and moved to set aside the judgment that he might have allotted to him his interest in the land. These children succeeded to all of the rights of the father, and while they might have appealed to this court they were not compelled to do so. See Civ. Code 1876, § 414, which provides:

"A defendant against whom a judgment may have been rendered upon constructive service of a summons, and who did not appear, may, at any time within five years after the rendition of the judgment, move to have the action retried * * * as if there had been no judgment; and, upon the new trial, the court may confirm the judgment or modify or set it aside," etc.

So if the father of these children could have filed such a petition there is no reason why they should not be permitted to file it. They do not in express language ask the court to set aside the judgment,

but they file a petition setting forth the facts of the original judgment, its reversal, their next of kin to A. Lingenfelter and their right to an interest in the estate; and we perceive no reason why this did not entitle them to the relief sought. See *Payne v. Witherspoon,* 14 B. Mon. (Ky.) 217; *Allen v. Brown,* 4 Metc. (Ky.) 342; *Barbee v. Fox,* 79 Ky. 588, 3 Ky. L. 426. The judgment, therefore, on the appeal of *Lingenfelter's Heirs v. R. M. Carlisle's Admr. and Heirs* is reversed and the cause remanded for proceedings consistent with this opinion.

The questions arising on the appeal in the original case are numerous. The judgment gives to the heirs of R. M. Carlisle the interest of J. D. Carlisle because their ancestor had purchased it, and of this there is no complaint. The interest of L. H. Carlisle was adjudged to the heirs of R. M. Carlisle because he did not seek to reverse the judgment of the lower court, this court holding that he had the right to abandon his claim and abide by the judgment below.

The heirs or children of R. M. Carlisle are also given the interest of Mrs. Garrard, who was an heir of John Carlisle, and this is complained of as error on the cross-appeal of appellees. Mrs. Garrard conveyed her interest in the land to W. T. Carlisle in the event he would accept it, and if he could not take it then to R. M. Carlisle. This deed was made during the progress of the action and to enable Mrs. Garrard to testify. She then dismissed her answer and cross-petition and as this court held on the petition for a rehearing it was a disclaimer by her of any interest in the land. W. T. Carlisle was before the court as principal plaintiff and failed to assert any other right than his own interest, but risked the case upon the original hearing to be determined for Mrs. Garrard, and on the return of the cause asserts his right to this interest. It is true that R. M. Carlisle refused to accept the deed for the reason doubtless that it might have had as he supposed some effect upon his claim that was hostile to the heirs of his father; but still he might, during the progress of the action, have relied on the release made of her interest, and when she abandoned her right and dismissed her cross-petition this relieved him from the necessity of making any defense as to her claim. But it is insisted that the failure of Mrs. Garrard and L. H. Carlisle to assert their interests does not enure to the benefit of the heirs of R. M. Carlisle alone, but to all the children. R. M. Carlisle was in the possession of this land claiming it under a deed from an officer

of the state who had sold it. He was asserting a claim in his own right and had the possession under this claim for a period almost sufficient to bar the recovery by limitation. Some of the children fail or decline to assert their claim as against his. They may regard it as meritorious, and whether so or not they have no other right than their own interest in this land subject to be increased or diminished by the advancements that each of the children may have received. It results, therefore, that the heirs of R. M. Carlisle are entitled to their own interest whatever that may be, and the interests of Martha Garrard, L. H. Carlisle and J. D. Carlisle.

However, it is assigned for error by the heirs of R. M. Carlisle that they have been prejudiced by compelling them to account for that portion of the land sold by their ancestor to third parties. We think not, and the fact that the title was involved in the litigation with reference to this land does not destroy the rights of the appellees in the original action to make the appellants account for it. This court can not understand why a coparcener may not sell his interest in the land before partition is made, and if he places the purchaser in possession, who resists successfully the right of recovery by the heirs, it affords no argument against making the coparcener selling it account for it. If shown to be some other estate sold and not the interest in a common estate it would be different, but here it is manifest from the pleadings and proof that a part of this land was sold by R. M. Carlisle, and equally as apparent that the purchasers ought not to be disturbed when the interest of R. M. Carlisle will amount to as much as has been sold. The other children are not complaining, nor is the purchaser, so they hold the title under these proceedings absolutely; and the only question is, Ought R. M. Carlisle to account for what he has sold? We think the only equitable mode of adjusting this branch of the case is to make him account for it. This the chancellor has done.

The extent of the interest of R. M. Carlisle as well as the other children being settled, it is proper now to consider the exceptions to the settlement as to the advancements made, and the settlement as to rents and improvements.

The appellants, the heirs of R. M. Carlisle, having been made responsible for the rents and improvements, and the improvements and manner of cultivating the land having added greatly to its value, we think the chancellor below acted properly in fixing the

valuation at the time the payment of rents ceased. In regard to the advancements made to each of the children we find a contrariety of proof, and the chancellor has made the settlement as nearly equal in this regard as could be done from the facts before him, except in relation to the negro girl charged to W. T. Carlisle. This court, in the opinion heretofore delivered, alluded to the valuation of this girl or the amount with which W. T. Carlisle was to be charged. That question was not before the court for the case had necessarily to go to the commissioner for proof in regard to the advancements made each child, and if the girl was worth $500 or more the commissioner ought to charge W. T. Carlisle with it, and on that point proof may be taken, as the previous declaration by this court may have misled the parties. As to the advancements the judgment is alone reversed as to this item.

There are many witnesses as to the value of the rents and improvements. Some of them are the immediate neighbors of the parties and others live in the vicinity of the land. The aggregate amount of rents as fixed by the proof might be in excess of that fixed by the commissioner, but when we look to the condition of the land when R. M. Carlisle took possession of it, and its careful cultivation and development by him, the rent is fully as much as it should have been. As to the improvements they were beneficial and necessary and greatly enhanced the value of the place, and their value properly estimated, except the value of the house erected by Carlisle or his son-in-law. The old brick structure was in a dilapidated condition, almost ready to fall and worthless except the material in it. The building erected cost near $3,000, and while the material from the old building was worth something, when you consider the cost of tearing it down and removing the brick fit for use, it cost nearly as much as the new brick; but fixing the material at a cost of $600 or $800 there was the difference of $2,000 in favor of the new building instead of $1,000, and as to this item, therefore, the judgment is reversed. From the statements of a great number of witnesses the chancellor so determined the value of the rents and improvements, and the judgment except in the particulars mentioned varies so little from the proof, that it must be held as just and equitable.

The cross-appellees also assign for error the fact that R. M. Carlisle, the ancestor of the appellants, had been repaid his money paid for the land sold under the order of the general court. We think

not, and while there may be proof conducing to such a conclusion, we think it is manifest that the son secured to his father the homestead, while others of the children were unwilling to do so, and some of them perhaps loaned him money at enormous rates of interest. His action has also reserved to them the land they are now seeking, and after such a lapse of time, with the exercise and control of the property for years by R. M. Carlisle as his own, the chancellor will not deprive him of the money he paid as well as the land itself. It is just and equitable that his money should be refunded and that his portion of the rents be credited to him whilst in possession. The judgment is therefore reversed on the appeal in the original case for the error in regard to the valuation placed on the girl, and as to the allowance made appellants for the house, and affirmed in all other respects. The judgment is reversed on the appeal of Lingenfelter and cause remanded permitting the appellants if they desire, to respond to their answer and cross-petition.

This court only decides on this branch of the case that, if Sallie was the daughter of John Carlisle and married Lingenfelter and died leaving a child and that child died over age, the child being entitled, his father inherited from him and when the father died it went to his heirs. If these be the facts their interests should be allotted them. The cause is remanded for further proceedings and judgment *affirmed* on the appeals and cross-appeals except as herein indicated.

*Collins & Fenley, for appellants, Lingenfelter, etc., and appellees, Ellis, etc.*

*Carlisle & O'Hara, for appellee, Carlisle's Admr., and appellants, Green, etc.*